UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. *NOEL L. HiLLMAN* |
| v. | : Crim. No. 18- *22 - NLH* |
| JOSEPH KELLEY and JAMES LEWIS | : 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B) |
| | : 18 U.S.C § 371 |
| | : 18 U.S.C. § 554 |
| | 18 U.S.C. § 2 |

**INDICTMENT**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges, at all times relevant to this Indictment:

**INTRODUCTION**

**Background**

1.     The American eel (*Anguilla rostrata*) was a species of fish native to the United States. The American eel was considered a "catadromous" species, which meant it reproduced in salt water systems and matured in fresh water (riverine) systems. American eel eggs typically hatched in the Sargasso Sea near the Bahamas and Bermuda, after which ocean currents carried the juvenile eels along the eastern North American coast. When they approached land, tidal fluctuations washed them into bays and tidal creeks, and the eels were drawn into freshwater river systems along the coastline, after which they began to migrate upstream. It was at this juvenile stage, during which the eel measured approximately 2-3 inches in length and was transparent, that the eel was referred to as an "elver" or a "glass eel." Once an elver matured into a

"silver eel," which had dark pigmentation, it would return to the sea in order to spawn.

2.     American eels could survive in captivity only when captured as juveniles. Thus, the commercial market for American eels in the United States was concentrated on their juvenile "elver" stage. Elvers were worth many times more than adult eels, and fetched the highest prices when exported live to Hong Kong, Japan, Korea, and other East Asian countries. There, they were raised in captivity to adulthood and sold for sushi and other foods. In the United States, dealers paid as much as $2,000 per pound for live elvers destined for export.

3.     South Carolina and Maine were the only states that allowed commercial harvest of elvers, and elver fishing and commerce were heavily regulated in both of those states. Florida had a commercial fishery for adult eels, through which fishermen could legally harvest elvers, but the eels' migration patterns meant that there were vanishingly few elvers to be harvested in Florida's waters.

4.     Defendant JOSEPH KELLEY was a resident of in or around Woolwich, Maine.

5.     Defendant JAMES LEWIS was a resident of in or around West Bath, Maine.

6.     Co-Conspirator Albert Cray (hereinafter, "Co-Conspirator Cray") was a resident of in or around Phippsburg, Maine.

2

7.     Co-Conspirator Mark Green (hereinafter, "Co-Conspirator Green") was a resident of in or around West Bath, Maine.

8.     Co-Conspirator John Pinkham (hereinafter, "Co-Conspirator Pinkham") was a resident of in or around Bath, Maine.

9.     Co-Conspirator George Anestis (hereinafter, "Co-Conspirator Anestis") was a resident of in or around Boxborough, Massachusetts.

10.     Co-Conspirator Michael Bryant (hereinafter, "Co-Conspirator Bryant") was a resident of in or around West Yarmouth, Massachusetts.

11.     Co-Conspirator Thomas Choi (hereinafter, "Co-Conspirator Choi") was the owner of a seafood company in or around Cambridge, Maryland, which engaged in the purchase, sale, and export of elvers.

## Relevant Statutes and Regulations

12.     The Lacey Act, Title 16, United States Code, Section 3371 *et seq.*, made it unlawful for any person to transport, sell, receive, acquire, or purchase in interstate commerce any fish or wildlife, when the person knew or should have known that the wildlife had been taken, possessed, transported, or sold in violation of a wildlife-related law or regulation of a state. See 16 U.S.C. § 3372(a)(2)(A).

13.     New Jersey Administrative Code, Title 7, Chapter 25, Subchapter 18.1, prohibited the purchase, sale, offer for sale, or exposure for sale of American Eels less than nine inches in length; any commercially licensed person was presumed to possess such species for sale purposes.

3

14.     Connecticut General Statutes, Title 26, Chapter 490, Section 26-128a, prohibited the taking of any elver eel, glass eel, or silver eel.

15.     Massachusetts General Law (MGL), Chapter 130, Section 100D, and Chapter 131, Section 52A, established a six-inch minimum size limit for catching American eel.

16.     Code of Rhode Island Rules Chapter 25, Division 8, Rule 4, Part VII, 7.16.2-1, prohibited the possession, take, sale or offer for sale of any American eel less than nine inches total length.

## COUNT ONE
## (Conspiracy to Violate the Lacey Act)

17.     Paragraphs 1 through 16 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

18.     From in or about January 2013 through in or about May 2014, in the District of New Jersey, and elsewhere, defendants

### JOSEPH KELLEY and
### JAMES LEWIS

(hereinafter, collectively, the "Defendants") knowingly and intentionally conspired and agreed with each other, and with Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator Pinkham, Co-Conspirator Anestis, Co-Conspirator Bryant, Co-Conspirator Choi, and others, to commit the following offenses:

> a. to knowingly acquire, receive, purchase, sell, and transport wildlife, namely, elvers, knowing that those elvers had been taken, possessed, transported, and sold in violation of the laws

4

and regulations of the States of New Jersey, Massachusetts,

Rhode Island, Connecticut, and others, contrary to Title 16,

United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B);

and

b. to knowingly receive, buy, and sell, and facilitate the

transportation and sale of, American eels, prior to exportation,

knowing the eels to be intended for exportation contrary to a

law and regulation of the United States, namely, Title 16,

United States Code, Sections 3372(a)(1), 3372(a)(4), and

3372(d)(2), and Title 50, Code of Federal Regulations, Section

14.63, contrary to Title 18, United States Code, Section 554.

## Objects of the Conspiracy

19.    The objects of the conspiracy were to harvest elvers, in violation of

state law, to sell elvers for profit, and to fraudulently disguise the origins of

those elvers in order to deceive regulatory entities of the United States at the

time of export.

## Manner and Means of the Conspiracy

20.    It was a part of the conspiracy that the Defendants, Co-

Conspirator Cray, Co-Conspirator Green, Co-Conspirator Pinkham, Co-

Conspirator Anestis, Co-Conspirator Bryant, and others, fished for and caught

elvers in New Jersey, Massachusetts, Rhode Island, Connecticut, and

elsewhere.

21. It was further a part of the conspiracy that the Defendants, Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator Pinkham, Co-Conspirator Anestis, Co-Conspirator Bryant, and others, arranged to sell elvers they caught in violation of state law to Co-Conspirator Choi in Maryland and other elver dealers and exporters in Connecticut, New Jersey, and Massachusetts.

22. It was further a part of the conspiracy that the Defendants, Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator Pinkham, Co-Conspirator Anestis, Co-Conspirator Bryant, and others, transported elvers in interstate commerce from the fishing locations to elver dealers and exporters, using vehicles outfitted with aerated tanks to keep the elvers alive.

23. It was further a part of the conspiracy that the Defendants, Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator Pinkham, Co-Conspirator Anestis, and others, obtained non-resident commercial fishing licenses from the State of Florida to present to dealers and exporters in documenting elver sales as required by the United States Fish and Wildlife Service, in order to falsely claim upon export that the defendants had legally harvested the elvers in Florida waters. Co-Conspirator Choi obtained a dealer's license from the State of Florida for the same purpose.

24. It was further a part of the conspiracy that the Defendants, Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator Pinkham, Co-Conspirator Anestis, Co-Conspirator Bryant, Co-Conspirator Choi, and others,

6

trafficked in over $1.5 million worth of American eels obtained in violation of state law.

## Overt Acts

25.   In furtherance of the conspiracy and to effect the unlawful objects thereof, the following overt acts, among others, were committed in the District of New Jersey and elsewhere:

### 2013 Season

a. OVERT ACT 1: In or around January and February 2013, at defendant JAMES LEWIS's recommendation, Co-Conspirator Cray, Co-Conspirator Green, and Co-Conspirator Anestis, applied for, and were issued, licenses to harvest American eels in Florida. The purpose of these licenses was to conceal the origins of illegally harvested elvers by claiming they had been legally harvested in Florida.

### 2013: New Jersey

b. OVERT ACT 2: In or around February and March 2013, the Defendants and others traveled from Maine to Millville, New Jersey, where Co-Conspirator Cray rented a storage locker and hotel room.

c. OVERT ACT 3: In or around February and March 2013, defendant JOSEPH KELLEY and Co-Conspirator Green transported a quantity of American eels, which had been harvested illegally in Massachusetts, from Massachusetts to New Jersey.

d. OVERT ACT 4: In or around February and March 2013, defendant JOSEPH KELLEY, Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator

Bryant, and others, caught a quantity of American eels in or around Millville, New Jersey.

e. OVERT ACT 5: In or around February and March 2013, defendant JOSEPH KELLEY and Co-Conspirator Green sold a quantity of American eels transported from Massachusetts and caught in New Jersey to Co-Conspirator Choi in Cambridge, Maryland. They provided a Florida non-resident commercial fishing license to falsely claim that the eels had been harvested in Florida.

f. OVERT ACT 6: In or around February and March 2013, defendant JOSEPH KELLEY, Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator Bryant, and others, caught a quantity of American eels in or around Millville, New Jersey.

g. OVERT ACT 7: In or around February and March 2013, defendant JOSEPH KELLEY and Co-Conspirator Green sold the American eels they caught in New Jersey to Co-Conspirator Choi in Cambridge, Maryland. Co-Conspirator Choi provided a receipt documenting a sale of 91 pounds of elvers for $109,000.

h. OVERT ACT 8: On or about March 13, 2013, Co-Conspirator Choi sold the American eels he purchased from defendant JOSEPH KELLEY and Co-Conspirator Green to an elver exporter in New York. Co-Conspirator Choi provided Co-Conspirator Green's Florida non-resident commercial fishing license information and a fisherman's list claiming that Co-Conspirator Green had caught the eels in Florida.

8

i. OVERT ACT 9: From on or about March 13, 2013, through on or about March 15, 2013, defendant JOSEPH KELLEY, Co-Conspirator Cray, Co-Conspirator Green, Co-Conspirator Bryant, Co-Conspirator Pinkham, and others, caught a quantity of American eels in or around Millville, New Jersey.

j. OVERT ACT 10: On or about March 15, 2013, Co-Conspirator Cray, Co-Conspirator Green, and others, sold the American eels they caught in New Jersey to Co-Conspirator Choi in Cambridge, Maryland.

k. OVERT ACT 11: On or about March 30, 2013, Co-Conspirator Choi sold the American eels he purchased from New Jersey fishermen to an elver exporter in New York. Co-Conspirator Choi provided Co-Conspirator Cray and Co-Conspirator Green's Florida non-resident commercial fishing license information and a fisherman's list claiming that Co-Conspirator Cray and Co-Conspirator Green had caught the eels in Florida.

l. OVERT ACT 12: On or about March 30, 2013, defendant JOPSEH KELLEY and others caught a quantity of American eels in or around Millville, New Jersey.

m. OVERT ACT 13: On or about March 31, 2013, defendant JOSEPH KELLEY and others again caught a quantity of American eels in or around Millville, New Jersey.

n. OVERT ACT 14: On or about April 1, 2013, defendant JOSEPH KELLEY and others sold the American eels they caught in New Jersey to Co-Conspirator Choi in Cambridge, Maryland. They provided a Florida non-

resident commercial fishing license to falsely claim that the eels had been harvested in Florida.

o. OVERT ACT 15: On or about April 1, 2013, Co-Conspirator Choi sold American eels he purchased from New Jersey fishermen to an elver exporter in New York. Co-Conspirator Choi provided Co-Conspirator Cray's and Co-Conspirator Green's Florida non-resident commercial fishing license information and a fisherman's list claiming that Co-Conspirator Cray and Co-Conspirator Green had caught the eels in Florida.

p. OVERT ACT 16: On or about April 9, 2013, defendant JOSEPH KELLEY, defendant JAMES LEWIS, Co-Conspirator Green, Co-Conspirator Pinkham, and others, caught a quantity of American eels in or around Millville, New Jersey.

q. OVERT ACT 17: From on or about April 10, 2013, through on or about April 11, 2013, defendant JOSEPH KELLEY, Co-Conspirator Pinkham, and others, again caught a quantity of American eels in or around Millville, New Jersey.

r. OVERT ACT 18: On or about April 12, 2013, defendant JOSEPH KELLEY and others sold the American eels caught in New Jersey, including those caught by defendant JAMES LEWIS, Co-Conspirator Green, and Co-Conspirator Pinkham, on April 9, 2013, to Co-Conspirator Choi in northern New Jersey. They provided Co-Conspirator Cray's Florida non-resident commercial fishing license number to falsely claim that the eels had been harvested in Florida.

s. OVERT ACT 19: On or about April 12, 2013, after the sale to Co-Conspirator Choi, defendant JOSEPH KELLEY and others cleaned out the storage locker in Millville, New Jersey, and drove back to Maine.

t. OVERT ACT 20: On or about April 19, 2013, Co-Conspirator Choi sold American eels he had purchased from New Jersey fishermen to an elver exporter in New York. Co-Conspirator Choi provided Co-Conspirator Green's Florida non-resident commercial fishing license information and a fisherman's list claiming that Co-Conspirator Green had caught some of the eels in Florida.

#### 2013: New England

u. OVERT ACT 21: On or about March 10, 2013, defendant JOSEPH KELLEY, Co-Conspirator Cray, Co-Conspirator Green, and Co-Conspirator Bryant fished for American eels at Swan Lake Village in Yarmouth, Massachusetts.

v. OVERT ACT 22: On or about April 2, 2013, defendant JAMES LEWIS and Co-Conspirator Green transported a quantity of American eels caught by Co-Conspirator Anestis in Rhode Island to Co-Conspirator Choi in New York.

w. OVERT ACT 23: In or around April 2013, defendant JAMES LEWIS and Co-Conspirator Green caught a quantity of American eels in Haverhill, Massachusetts.

x. OVERT ACT 24: In or around April 2013, defendant JAMES LEWIS and Co-Conspirator Green sold the American eels they caught in Massachusetts to Co-Conspirator Choi in Massachusetts.

y. OVERT ACT 25: In or around April 2013, defendant JAMES LEWIS, Co-Conspirator Green, Co-Conspirator Pinkham, and Co-Conspirator Anestis again caught a quantity of American eels in Haverhill, Massachusetts.

z. OVERT ACT 26: In or around April 2013, defendant JAMES LEWIS, Co-Conspirator Green, Co-Conspirator Pinkham, and Co-Conspirator Anestis hired someone to drive the American eels they caught in Haverhill to Co-Conspirator Choi's facility in Cambridge, Maryland, where Co-Conspirator Choi purchased the elvers.

aa. OVERT ACT 27: In or around April 2013, defendant JAMES LEWIS, Co-Conspirator Green, and Co-Conspirator Anestis caught a quantity of American eels in Haverhill, Massachusetts.

bb. OVERT ACT 28: In or around April 2013, defendant JAMES LEWIS, Co-Conspirator Green, and Co-Conspirator Anestis sold the American eels they caught in Massachusetts to an elver dealer in Connecticut.

cc. OVERT ACT 29: On or about April 30, 2013, Co-Conspirator Choi exported American eels he purchased from Massachusetts fishermen to a seafood company in South Korea. Co-Conspirator Choi provided defendant JOSEPH KELLEY, Co-Conspirator Green, and Co-Conspirator Anestis's Florida non-resident commercial fishing license information and a fisherman's list claiming that defendant JOSEPH KELLEY, Co-Conspirator Green, and Co-Conspirator Anestis, had caught the eels in Florida.

**2014 Season**

dd.     OVERT ACT 30: From in or about October 2013 through in or about January 2014, Co-Conspirator Cray, Co-Conspirator Green, and Co-Conspirator Pinkham applied for and were issued licenses to harvest American eels in Florida. The purpose of these licenses was to conceal the origins of illegally harvested eels by claiming they had been legally harvested in Florida.

ee.     OVERT ACT 31: From on or about March 10, 2014, through on or about March 24, 2014, defendant JOSEPH KELLEY, Co-Conspirator Green, Co-Conspirator Pinkham, and others, caught a quantity of American eels in or around Millville, New Jersey.

ff.     OVERT ACT 32: On or about March 26, 2014, Co-Conspirator Green and another individual sold the American eels they caught in New Jersey to Co-Conspirator Choi in Cambridge, Maryland. They provided a Florida non-resident commercial fishing license to falsely claim that the eels had been harvested in Florida. Co-Conspirator Choi paid approximately $24,100 for approximately 64 pounds of elvers.

gg.     OVERT ACT 33: On or about March 26, 2014, Co-Conspirator Choi sold American eels he purchased from New Jersey fishermen to an elver exporter in New Jersey. Co-Conspirator Choi provided Co-Conspirator Green and Co-Conspirator Pinkham's Florida non-resident commercial fishing license information and a fisherman's list claiming that Co-Conspirator Green and Co-Conspirator Pinkham had caught some of the eels in Florida.

hh.    OVERT ACT 34: On or about April 11, 2014, defendant JAMES LEWIS, Co-Conspirator Green, and Co-Conspirator Pinkham met Co-Conspirator Choi in Palisades Park, New Jersey, to sell American eels that defendant JAMES LEWIS, Co-Conspirator Green, and Co-Conspirator Pinkham had obtained in Connecticut.

ii.    OVERT ACT 35: On or about April 15, 2014, Co-Conspirator Choi sold American eels he purchased from New Jersey fishermen to an elver exporter in New Jersey. Co-Conspirator Choi provided Co-Conspirator Green and Co-Conspirator Pinkham's Florida non-resident commercial fishing license information and a fisherman's list claiming that Co-Conspirator Green, Co-Conspirator Pinkham, and others, had caught some of the eels in Florida.

jj.    OVERT ACT 36: On or about April 17, 2014, at a house in Cedarville, New Jersey, defendant JAMES LEWIS, Co-Conspirator Green, Co-Conspirator Pinkham, and others, sold Co-Conspirator Choi American eels that defendant JAMES LEWIS and his associates had caught in New Jersey. Co-Conspirator Choi provided approximately $21,600 for approximately 40 pounds of elvers.

kk.    OVERT ACT 37: On or about April 17, 2014, Co-Conspirator Choi sold American eels he purchased from New Jersey fishermen to an elver exporter in New Jersey. Co-Conspirator Choi provided Co-Conspirator Green and Co-Conspirator Pinkham's Florida non-resident commercial fishing license information and a fisherman's list, claiming that Co-Conspirator Green and Co-Conspirator Pinkham had caught some of the eels in Florida.

14

## COUNTS TWO THROUGH FIVE
### (Violations of the Lacey Act)

26.     Paragraphs 1 through 16, and 19 through 25, of this Indictment
are hereby realleged and incorporated by reference as if fully set forth herein.

27.     On or about the dates specified in the table below, in the district of
New Jersey and elsewhere, the defendants, as specified in the table below,
knowingly engaged and attempted to engage in conduct involving the purchase
and sale of fish, namely, American eels, with a market value in excess of $350,
by knowingly receiving, acquiring, selling, and transporting, and attempting to
receive, acquire, purchase, and transport, such fish in interstate and foreign
commerce, knowing such fish were taken, possessed, and transported in
violation of and in a manner unlawful under the laws and regulations of a
state, when such fish were in fact taken, possessed, transported and sold in
violation of the laws and regulations of the states specified in the table below:

| Count | Defendant | Date (on or about) | State Law Violated | Place of Transport or Sale |
|---|---|---|---|---|
| 2 | JOSEPH KELLEY | March 12, 2013 | New Jersey Administrative Code, Title 7, Chapter 25, Subchapter 18.1 | Maryland |
| 3 | JOSEPH KELLEY | April 1, 2013 | New Jersey Administrative Code, Title 7, Chapter 25, Subchapter 18.1 | Maryland |

15

| Count | Defendant | Date (on or about) | State Law Violated | Place of Transport or Sale |
|-------|-----------|--------------------|--------------------|----------------------------|
| 4 | JAMES LEWIS | April 2013 | Massachusetts General Laws, Chapter 130, Section 100D, and Chapter 131, Section 52A | New Jersey |
| 5 | JAMES LEWIS | April 11, 2014 | Connecticut General Statutes, Title 26, Chapter 490, Section 26-128a | New Jersey |

In violation of Title 16, United States Code, Sections 3372(a)(2)(A),

3372(a)(4), and 3373(d)(1)(B), and Title 18, United States Code, Section 2.

16

## COUNT SIX
### (Smuggling)

28.     Paragraphs 1 through 16, and 19 through 25, of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

29.     On or about April 12, 2013, in the District of New Jersey, and elsewhere, defendant

## JOSEPH KELLEY

did knowingly receive, buy, and sell, and facilitate the transportation and sale of, American eels, prior to exportation, knowing the eels to be intended for exportation contrary to a law and regulation of the United States, namely, Title 16, United States Code, Sections 3372(a)(1), 3372(a)(4), and 3372(d)(2), and Title 50, Code of Federal Regulations, Section 14.63.

In violation of Title 18, United States Code, Section 554, and Title 18, United States Code, Section 2.

17

## COUNT SEVEN
## (Smuggling)

30.    Paragraphs 1 through 16, and 19 through 25, of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

31.    On or about April 17, 2014, in the District of New Jersey, and elsewhere, defendant

### JAMES LEWIS

did knowingly receive, buy, and sell, and facilitate the transportation and sale of, American eels, prior to exportation, knowing the eels to be intended for exportation contrary to a law and regulation of the United States, namely, Title 16, United States Code, Sections 3372(a)(1), 3372(a)(4), and 3372(d)(2), and Title 50, Code of Federal Regulations, Section 14.63.

In violation of Title 18, United States Code, Section 554, and Title 18, United States Code, Section 2.

A TRUE BILL

_____
FOREPERSON

JEFFREY H. WOOD
ACTING ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION

By: _____

Cassandra Barnum
Trial Attorney
U.S. Department of Justice
Environmental Crimes Section

18

**CASE NUMBER:** _____

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

**v.**

**JOSEPH KELLEY and
JAMES LEWIS**

# INDICTMENT FOR

**16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B)
18 U.S.C. § 371
18 U.S.C. § 554
18 U.S.C. § 2**

A True Bill,

Foreperson                    _____

**JEFFREY H. WOOD**

*ACTING ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION*

CASSANDRA BARNUM
*TRIAL ATTORNEY*
*(202) 305-0333*

USA-48AD 8